523-0669 W.C. Laura Partin, Appellant by Caitlin Rich v. Illinois Workers' Compensation Commission, et al., Northern American Lighting, Inc., Affiliated by Stephen Carter. My name is Caitlin Rich. I'm here on behalf of the employee appellant, Ms. Laura Partin. This is actually my first time arguing in front of the appellate court, so it's very nice to see you all today, as well as Mr. Carter. Welcome. And the issue before the court today is on the threshold issue of accident, and the injury we're looking at is plaintiff's February 9, 2018, neck injury. The appellate court has stated, while the manifest weight of the evidence standard is a hurdle, it does not relieve the reviewing court of the obligation to impartially examine the evidence and to reverse an order that is unsupported by the facts. So, the commission, in this case, reversed the arbitrator on the issue of accident and, therefore, did not address any other issue. However, in doing so, they conflated the issues of accident, notice, and causation. Stated simply, the issue of accident is based in facts and law, the issue of notice is based in I ask you today to look at the dissent for guidance and look back to the arbitrator's decision for a concise and logical determination. Commissioner Tyrell agreed with arbitrator Cantrell that the discrepancies in plaintiff's testimony were minor, and he stated the majority ignored the most compelling evidence. I would go one step further and contend that the majority commissioners misapplied the facts to the law. As Commissioner Tyrell noted, quote, it is irrefutable that within five days after her date of injury, plaintiff clearly identified February 9, 2018, as her date of injury and clearly identified the grinding she performed at work on that day as the cause of her injury. Regardless of when she reported her injury to Mr. Almey, on February 14, 2018, she completed an accident report that identified the date and mechanism of injury that is fully consistent with her testimony. Most importantly, the plaintiff to be a credible witness. Commissioner Tyrell pointed this out in his dissent, noting arbitrator Cantrell took great care in weighing all of the evidence and writing a detailed and well-reasoned decision. He believed the arbitrator correctly concluded plaintiff testified credibly regarding her date of injury as well as her mechanism of injury. So, on February 9, 2018, plaintiff injured her neck while disassembling and grinding a car-sized trolley. From page 27 through 35 of her testimony, she describes what this is like. She had to move all over the place, essentially. She had to stretch well above her head. She spent two hours grinding the metallic finish. She testified that she had to grind in all different positions. She described that sometimes she would be on her tippy toes, stretching as far as she could. She would have to hold her body in unnatural positions, twisting and turning sometimes. There are also bolts that stick out and uneven surfaces on the metal. When the grinder would run over those pieces, she said it would kick. She said this has caused people to drop the grinder. She's been slammed in the chest and face by the grinder before while doing this. So, the accident in this case she testified occurred on February 9th. The act gives Ms. Parton 45 days to report an accident to her employer. When she reports her accident to her notice, notice was not disputed in this case. On February 14th, 2018, just a few days after the accident, she wrote a written report of injury describing her accident on February 9th, 2018, while grinding. Her account was that she injured her neck, quote, during and after grinding, neck kind of hurt like a light feeling with burning down left side between shoulder and spine. As the records reflect, this is the same history she gave her medical providers in the same area of injury. Plaintiff also reported an issue that she had with a trolley on February 3rd, which is noted in both respondent's brief as well as the commission's decision. There is no explanation about an injury on that date. Plaintiff explained the conversation she had with her supervisor regarding that incident in her testimony, specifically noting that she was asked if she did anything, quote, hard recently, and she explained she had difficulty loading a trolley on February 3rd. She did not report any neck pain following February 3rd and did not claim any injuries for February 3rd. Even if she was to sustain an injury on February 3rd, that is not before the court, and it is irrelevant to the court's analysis of whether she sustained an injury on February 9th, 2018. So regardless of what she may have told her supervisor about that February 3rd date, and regardless of the hearsay of what some of her other supposed co-workers could have said about her neck pain prior to February 9th, what we have is irrefutable evidence that she completed an accident report on February 14th describing a mechanism of injury that was consistent with her testimony and consistent with the history she gave her medical providers. She reported this history to Paul Almey and requested care and treatment. She was seen in an express clinic on that date with neck pain. The PA who examined her noted that plaintiff reported grinding at work where she had to hold up her hands and look up, which caused her neck to hurt. She had burning pain in the back of her neck since before the weekend. She was given restrictions, a muscle relaxer, and steroid. Plaintiff was initially uncertain about the definite time, place, and cause of her injury, which respondent relies heavily upon and which the commission majority erroneously relied upon. This was cured when plaintiff reported her filed, or I'm sorry, when plaintiff reported her written report of injury, and she had filed her application for adjustment of claim, and additionally, every time she saw a medical provider for her condition. As I said before, the act gives her 45 days to figure out and provide notice to her employer. She provided that notice within five days. There is no evidence to rebut plaintiff's testimony that she spent two hours grinding a trolley carriage overhead on February 9th, 2018. There's testimony that sometimes an employee there would only grind for 20 minutes and testimony that sometimes they would only grind for four hours. There is no testimony, no reports, no surveillance, or any other documentation that rebuts plaintiff's statement that she was grinding overhead, and in the course of doing so, developed an onset of neck pain. In order to find an accident did not occur on February 9th, the court simply has to determine whether an injury occurred within the course and scope of plaintiff's employment on that date. So, the questions aren't whether she sustained injuries any other day, but whether she sustained an injury on February 9th, 2018, and its origins are in a risk connected or incidental to her employment. She has to show that the risk is peculiar to the work or that she is exposed to a risk of injury to a greater degree than the general public. The records and testimony all support that she was grinding for at least two hours on that February 9th date. This task is a part of her job description. There is no other history about any other injury or mechanism of injury on February 9th, 2018. The majority, the commission majority ignores the fact that in more than seven years preceding the date of injury, plaintiff sought no medical treatment for complaints relating to her cervical spine. During that prolonged period, it is unrebutted that no doctor recommended that plaintiff go under any type of cervical surgery before this work injury. All of this changed on the date of the accident. In addition, Commissioner Tyrell noted it was inappropriate to use the fact that plaintiff amended her claim as a basis to deny compensation when the law allows for claimants to do so freely to comport with the evidence produced at trial. The amount of time plaintiff spent grinding, which grinder she was using, and which position she was in when using it do not go to the issue of accident, but those facts are to be analyzed by the physicians to determine whether they are the cause of her condition of ill being. Here, both the treating doctor and the IME doctor found they could have aggravated her underlying condition. The majority commissioners ignored the facts that were plainly apparent to the dissenting commissioner and arbitrator that led them to find she had met her prudent proof. There were no documented complaints prior to this accident. Plaintiff consistently identified the overhead shoulder-level work for her employer as the culprit of her complaints. She consistently complained of her injury following the accident. There's undisputed evidence that plaintiff used grinding tools for at least two hours, if not four, at a time when the operating crew was short two employees, as admitted by defendant's own witness. There is no credible evidence that plaintiff suffered an intervening accident. Additionally, Dr. Gornett opined that plaintiff's job activities caused her injury, and Dr. DeGrange plainly acknowledged that their reported injury on February 9, 2018, could have aggravated plaintiff's condition. Over the ensuing months, plaintiff remained symptomatic, and each provider that she saw received the same report of the mechanism of her injury. Ultimately, after unsuccessful injections, medications, therapy, and work restrictions, Dr. Gornett recommended a two-level cervical disc replacement surgery to address massive herniations at C4-5 and C5-6. Respondent had plaintiff examined by Dr. DeGrange to address her back injury from 2017 and her neck injury from 2018. He noted the same symptoms as Dr. Gornett, neck pain with radiation into her right upper extremity from the shoulder to her elbow, and some occasional numbness tingling in the right hand. He was of the opinion that her cervical symptoms were aggravated by the February 9, 2018 injury. When she was evaluated by Dr. DeGrange, he noted that her cervical symptoms appeared to have been aggravated as a result of her customary job duties on that date. Dr. DeGrange could not say whether her condition pre-existed her accident because he did not have an MRI prior to the February 2018 accident. When he was presented with the 2010 MRI and the 2018 MRIs of her cervical spine, he admitted that the disc protrusions had grown. He attributed some of her increasing symptoms as a result of the 2018 accident, and he further stated that due to her disc herniations at C4-5 and C5-6, she was a candidate for surgery. He stated it was possible her disc herniations at C4-5 and C5-6 were caused by the work accident she described in February, 2018. So, in conclusion, the manifest weight of the evidence establishes that the dissenting commissioner and arbitrator properly found that plaintiff sustained her burden of proof in establishing that she sustained accidental injuries on February 9, 2018, which arose out of and in the course of her employment with the defendant. Plaintiff praised that this honorable court reverses the commission's decision and opinion on review and reinstates the decision of the arbitrator. Do you have any questions? Any questions from the court? Yes, I was going to ask how the commission found, for whatever reason, that your client was not credible, and arguably that undermines both her testimony and the testimony of the doctors to the extent they relied on her history. And so, if that credibility finding that the commission made isn't against the manifest weight of the evidence, can you carry your burden? And if that was too long a question, it probably was. I'm happy to break it down. Sure, and I would say that the finding that petitioner's credibility was not enough is against the manifest weight of the First, the arbitrator found she was credible. Commissioner Tyrell found she was credible, and the arbitrator notably was the only one to actually hear and be present for petitioner, I'm sorry, plaintiff's testimony. She had the opportunity to see her in person and each of the witnesses included in the arbitration transcript. She also had the opportunity to actually hold the different grinders that her employer brought in and had the chance to watch petitioner hold them as well. So I think that gives her additional authority to kind of determine petitioner's credibility here. As well as the medical records, there is nothing that suggests that there was any type of other accident that occurred. I know there was mention of a gardening accident as well, which I'm sure you reviewed in the briefs. Petitioner clears this up in her testimony as well. She said she was gardening and she felt an increase in her pain, nothing specifically caused a new injury. This was something that she just reported to her therapist because she was already treating for her cervical condition. So in conclusion, I think that petitioner's testimony, her medical records, her accident report, as well as Dr. Burnett's testimony and the fact that he had treated petitioner for so long all go to her credibility and that it does overturn the commission's decision that they did not find her credible and that that would be enough for a manifest weight against the evidence. Thank you, counsel. Any further questions from the court? No? Okay. Ms. Rich, you'll have time and reply. All right. Thank you. Mr. Carter, you may respond. Yes, sir. Good afternoon. May it please the court, your honors, counsel. My name is Steve Carter and I represent the FLE, North American Lighting. I'll refer to the FLE as the employer in this argument. The employer contends that the commission decision finding the employee not credible and finding that she failed to establish an accident was correct. Both findings were not contrary to the manifest weight of the evidence and the employer respectfully requests that this court affirm all aspects of that decision on appeal. Before I jump to my argument, I want to point something out. I pointed out in my brief claimants began their argument with the threshold issue as accident. Your honors, I believe the threshold issue as in this case and every commission case is credibility. You get the connection. You can't really find or base a decision on anything if a claimant isn't credible. That's the foundation of all cases. Justice Nolan, I think you got it exactly right. How do you get around that? I found it curious that their brief, I usually don't start with their brief. I usually start with mine, but their brief didn't even raise credibility. Their argument didn't raise credibility. I don't know how we get around that. That's exactly what the commission decision says. They don't say I don't find accident, therefore I don't find credibility. The commission said, and they were very clear about it. It wasn't small, little important minutia type things. It was every substantial element in this case that this lady did not tell a straight story about. That was what this case is about. It's the other stuff. They raised, plaintiff raised some things beyond the scope of this, like causal connection, intervening. None of that is relevant to what we're doing here because those issues are beyond accident. You do not get to those issues if you can't get beyond accident and if you cannot get beyond credibility. The bottom line here is this. There were two issues. It was credibility and accident here. We think the commission got it right under the manifest way to the evidence standard. The parties seem to agree that it's the manifest way of the evidence standard. We seem to agree that we're just talking about disputed questions of fact here. We seem to agree that the manifest way of the evidence governs this review. What the commission said and did, basically, they got straight into the contradictions. If you want to think this is just a straight, she proved her accident claim, let's look at the 20 pages the commission wrote about the different contradictions. I'll take you through a few. I'm not going to go blow by blow. I summarized them also in my brief. I took you through my brief through it and I spent two or three pages saying here's what the contradictions were, all of them. Justice Nolan, you said the credibility, whatever it was, I'm going to address that right now. Here's what the credibility problems were that weren't addressed by anyone. As to accident, and understand some of these things as to credibility go beyond accident. I don't know if that's important to you. Some of these went to intervening, whether there was an intervening accident, different issues about cause and effect. That might technically be on the scope of what we're doing here. But all the findings and all the inconsistencies as to accident are certainly within the scope of what we're talking about here. What are we talking about? As to accident, the claimant gave six possible accident dates for one injury. 2-2-18, 2-3-18, 2-9-18, and these are all dates she gave. We didn't give them. This isn't my testimony. This came from her records, her mouth. 2-10-18, 2-11-18, 2-12-18-6. By the way, if we can count the intervening, I won't say it's intervening, within the scope here, but if we count the gardening incident, that's seven. The employee also described at least five different mechanisms of work injury. Loading the trolley, grinding in OPMs, grinding the trolley, heavy lifting, looking up and to the left. If you count the gardening incident, that would make six. So, if you're interested in permutations and combinations, we got six accident dates, five mechanisms, 30 possibilities. So, what the plaintiff wants us to do is just to say, well, let's cherry pick one of her stories. One of her stories in all of that 30 permutation combination mass alleged to work injury. That's it. That's the end of the argument, end of story. Well, what if they didn't believe her? The commission didn't believe her about the one out of the 30, and that's exactly what happened, your honors. They did not believe her. There was too much going on here with regard to contradictions as to accident. We don't believe her. That's exactly what they said. By the way, we spent a lot of time on work duties. What's the work duty? Are you doing this, above head, how much to weigh, this, that, how do you do it? Commission spent five pages on that, and what the commission said is, that's just one more of her contradictions. What she said contradicted what all the other witnesses said, contradicted what she told her doctors. We don't have a straight set of, here is what happened, here is what my duties were, boom, boom. Employee got the date of at the time of the accident wrong that. The idea here is to suggest that we got a clean injury, that somehow nothing matters. I established an accident, and what I threw against the wall, credibility doesn't matter. That's just not true. Credibility matters, and frankly, in this case, that's what mattered, and that's why the commission did what it did, and said what it said. It told us, here's why we're doing. She didn't tell the truth across every single important element that were her duty to prove, both accident, whether the gardening incident happened, question is just a causal connection, not made it worse. All of that was just contradiction, after contradiction, after contradiction. I'll limit it just to accident. There's enough here about contradictions as an accident to support what the commission said, and the way it works is, if you can't get by accident, you don't get to causal connection. I would argue, if you can't get by credibility, you can't get to accident. You can't get to anything, and that's essentially what the commission did. From our point of view, the manifest way, the evidence stands for the proposition that if there's facts in the record to support these contradictions, to support the commission's fact-finding role, it's their call, and that's it. There are numerous facts. The commission wrote 21 pages. I read 40 some pages. They're there. I asked you to look at them. I appreciate what Mitch was saying. It's welcome to see you for your first one. The problem here is this lady's not credible, and we can't overcome that. I appreciate your time. In conclusion, we do not believe that the finding of the no accident were against the manifest way. The evidence, I very much appreciate your time. I have the utmost respect for you and for you, Ms. Rich, and I'll put myself on mute or try to. May I ask a question? Yes, ma'am. Thank you. What about Dr. DeGrange? Didn't he say that her work could have caused or aggravated her condition? Excuse me. He did say that. Is that enough? Is that enough? But that's not exactly. I didn't mean to cut you off. No, that's all right. But that's not exactly what he said. That's a mischaracter of what he said. First of all, that goes to the issue of causal connection, not action. But what he said is that, yes, it could have. If something like that, and what he said at the depth, I took it. I just kind of looked at him because he wasn't going to be the judge. He wasn't going to judge the lady. He just said she wasn't credible either. But what he said is, look, if something like that happened, yes, work duties could aggravate a condition. But what did he then said when I asked him? He said, in this case, it did not permanently aggravate her condition. So it temporarily aggravated. I'll concede that. I might even suggest that. But that doesn't mean that's simply, again, one fact the commission looked at. It's not dispositive. If you want to say, well, that's one more fact that they looked at, and I'm not bound by that opinion, that's one thing out of 31. They still found 30 things against her. And the bottom line, you don't get to his opinion if you don't get past her credibility. So the bottom line, could it have aggravated it? Sure. Did he say it did? No, he opined that it did not, in fact. That was his ultimate opinion. And that's what I talked to Gornett about, is did you just cherry pick that sentence when Gornett's reported? Did you really read what he said? And his deposition, he confirmed that. He said it did not, in my opinion, it did not aggravate it. Thank you, counsel. You bet. Thank you. Any other questions from the bench? No? Okay. Thank you, Mr. Carter. Thank you. Ms. Rich, you may reply. Yes, Your Honor. And just to start off, because it's on the top of my head regarding Dr. DeGrange, he did find, like Mr. Carter just said, he did find that at least temporary aggravated her condition. He did point out that the actual accident date and whether that happened wasn't his decision and wasn't part of his testimony, but he did believe there was some type of aggravation. And I think that does go to show that's another doctor that petitioner expressed the exact same history of her injury to. Additionally, if the foundation is credibility, the arbitrator is in the best position to determine that. And that's what Commissioner Tyrell pointed out as well. Additionally, as to the different dates of accident petitioner reported, she cleared this up within her testimony, as well as the time that she filed her accident report. So, whether she was confused beforehand doesn't essentially matter. She thought about this and within five days after her injury, reported this, wrote it down and gave it to her employer. So, the majority in this case chooses to focus on the discrepancies in the evidence regarding her work duties, her date of injury and relies on the existence of those discrepancies to conclude that she was not a credible witness. However, those discrepancies are minor and they should not negatively affect petitioner's credibility here. There certainly are inconsistencies, I'm sure you have read in both of our briefs regarding the date and the mechanism of injury evident in the testimony of petitioner, Mr. Almy, Mr. Splane, as well as in the medical records. However, it's irrefutable that within, like I said, five days after her injury, she clearly identified February 9th as her date of injury and clearly identified the grinding she performed at work on that day as the cause of her injury. So, regardless of when she actually reported her injury to Mr. Almy, on February 14th, she completed an accident report and identified the date and mechanism of injury that is fully consistent with her testimony as well as all of the medical records. Additionally, I think it's important to point out again, the majority is ignoring the fact that in the more than seven years preceding this injury, she sought no medical treatment for her complaints to her cervical spine. No doctor prescribed her any type of work restrictions due to her cervical condition and no doctor recommended she undergo any type surgical surgery before this work injury. All of that changed on the date of the accident. So, overwhelmingly, the evidence shows that on February 9th, 2018, petitioner, I'm sorry, plaintiff developed significant neck pain. She sought medical treatment a few days later and consistently told her treating medical providers that her neck pain was due to her work duties. So, essentially, we would ask that you consider all of this in your decision and overturn the decision of the arbitrator in this case. Any further questions from the court? No? Well, thank you, counsel, both for your arguments in this matter. Thank you. And I'm sorry for keep messing up petitioner, plaintiff. I'm so used to petitioner. I kept catching myself. We all do that. This matter will be taken under advisement and a written disposition shall issue. And at this time, the clerk of our court will escort you out of our remote courtroom. Thank you.